O

# United States District Court
# Central District of California

| | |
|---|---|
| DING CHEN,<br><br>                   Plaintiff,<br><br>     v.<br><br>CHRISTINE WORMUTH, Secretary of the Army,<br><br>                   Defendant. | Case № 2:22-cv-01905-ODW (MRWx)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT [29] AND AFFIRMING DECISION OF ARMY BOARD FOR CORRECTION OF MILITARY RECORDS** |

## I.     INTRODUCTION

Plaintiff Ding Chen brings suit against the Secretary of the Army, seeking an upgrade of his discharge characterization and review of other findings of the Army Board for Correction of Military Records pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*  On July 7, 2023, the Court held a hearing on the matter, taking sworn testimony from Chen and hearing arguments from both sides on Chen's Motion for Summary Judgment, (Mot. Summ. J. ("MSJ"), ECF No. 29), and on the final disposition of the case.  For the following reasons, the Court **DENIES** Chen's Motion for Summary Judgment and **AFFIRMS** the findings and determinations of the Army Board for Correction of Military Records.

## II.     BACKGROUND

In 2002, Chen, then a Chinese citizen, entered the United States on a student visa. (Mot. 1; Certified Administrative R. ("CAR") 18, 190, ECF Nos. 40 (unsealed, redacted), 41 (sealed, unredacted).) After he completed his schooling, he was approved to stay in the United States until January 31, 2008. (CAR 190–91.)

### A.     Marriage; Marriage Fraud Investigation

On October 23, 2007, Chen married Taylor Larrimore, a U.S. citizen. (Mot. 1; CAR 34, 181 (marriage certificate).) On January 23, 2008, Larrimore filed a Form I-130, Petition for Alien Relative, with United States Citizenship and Immigration Services ("USCIS"). (CAR 182–83 (I-130 Petition).) The purpose of filing this I-130 Petition was to assist Chen in obtaining Lawful Permanent Resident status in the United States. (*See* CAR 183.) As a result of filing the I-130 Petition, any deportation proceedings that might have taken place against Chen following the January 31, 2008 deadline were stayed pending USCIS's decision. (CAR 34, 291.) On May 17, 2008, as part of his pending I-30 Petition, Chen received an Employment Authorization Document ("EAD"). (CAR 167 (EAD).) The EAD is an "auxiliary benefit" of the immigration application process, and the mere fact that USCIS issues an applicant an EAD does not imply that the applicant's underlying immigration application is meritorious. (CAR 762.)

On June 17, 2008, as part of an investigation of Chen's marriage, Immigration and Customs Enforcement ("ICE") agents executed search warrants and arrest warrants at Chen's residence. (CAR 194.) ICE agents interviewed Chen, Chen's landlord, and Larrimore, among others. (CAR 194–203 (transcripts and summaries of interviews).) Chen told investigators that, prior to marrying Larrimore in December 2007, he had known her for about six months, had never spent the night in the same location as her, and had seen her a total of about eight times between August and October 2007. (CAR 195.) Chen's landlord told investigators that she had never seen Chen and Larrimore living together. (CAR 194.)

Larrimore, for her part, admitted to ICE investigators that she and Chen agreed to marry in exchange for "a couple of cell phones and about $4,000 cash" so that Chen could get a green card. (CAR 201–02.) When asked where she learned "how to do the marriage fraud," Larrimore gave the names of two individuals including one Kwan Tsoi. (*Id.*) Tsoi and her accomplice, Henry Navarro, were indicted for conspiracy to commit marriage fraud, and they both pled guilty to the offense in April 2009. (CAR 204–24 (Tsoi indictment and Navarro plea agreement).) Chen acknowledged that he met Navarro, but Chen stated that he did not know anything about Navarro. (CAR 196.)

The USCIS investigation did not lead to Chen being charged or convicted of the crime of marriage fraud. (CAR 291; Pl.'s Statement of Uncontroverted Facts ("SUF") 8, ECF No. 31; Def.'s Resp. SUF 8, ECF No. 43.)

**B.     Enlistment in Army; Citizenship Application**

On July 28, 2009, Chen enlisted in the Army under the Military Accessions Vital to National Interest (MAVNI) program. (CAR 226–28, 243.) MAVNI offered military service to certain non-permanent residents who held a valid nonimmigrant status for at least two years prior to enlistment. (CAR 343–48.) To prove that he met this requirement and had a valid immigration status, Chen submitted his EAD to his recruiter. (CAR 167–69.) Chen did not tell the recruiter that he had been the subject of an investigation for possible marriage fraud, or that his immigration status might not be valid.[1] (CAR 293.)

On February 1, 2010, Chen applied for U.S. citizenship based on his military service by filing an N-400 Application for Naturalization with USCIS. (SUF 12.)

---

[1] It appears that the Army admitted Chen even though the EAD he submitted did not constitute proof of F-1 immigration status, which is required to be admitted to the Army under MAVNI. (CAR 168–69.) In his papers, Chen speculates as to the reasons why this is so, but the record itself lacks any indication of the true reason the Army admitted Chen in spite of this irregularity. (Pl.'s Trial Br. ("Trial Br.") 7–8, ECF No. 51; *see* CAR 762–63.)

In October 2011, the Army Criminal Investigation Division received a USCIS report indicating that Chen had been investigated for marriage fraud in 2009. (CAR 287, 291, 293.) Based on this report, the Criminal Investigation Division opened an investigation into whether Chen fraudulently enlisted in the Army. (CAR 287–92.) As part of the investigation, Special Agent Michael Hessler took Chen's statement, in which Chen stated that he never paid any money to anyone for his marriage. (CAR 298.)

As a result of the investigation, the Criminal Investigation Division found probable cause to believe Chen committed the offense of fraudulent enlistment by "conceal[ing] information that his conditional residence in the country at the time of enlistment was not valid because his visa was procured from a fraudulent marriage," and also the offense of false official statement by representing to Special Agent Hessler that he did not pay for his marriage. (CAR 287–88, 293.)

**C.    Separation Action under AR 635-200**

On May 9, 2012, Chen's unit commander notified Chen that the Army had initiated a separation action under Army Regulation ("AR") 635-200, Chapter 7-17, for suspected fraudulent enlistment. (CAR 293–301 ("Executive Summary of Evidence").) AR 635-200, entitled *Active Duty Enlisted Administrative Separations*, provides the regulatory framework for the involuntary administrative separation of enlisted soldiers. Chapter 7 of the regulation, and specifically paragraphs 7-17 to 7-24, prescribes separation procedures applicable to cases of fraudulent entry.[2] Under AR 635-200, paragraph 7-17(a), "[f]raudulent entry is the procurement of an enlistment, re-enlistment, or period of active service through any deliberate material misrepresentation, omission, or concealment of information which, if known and considered by the Army at the time of enlistment or re-enlistment, might have resulted in rejection." In each case of suspected fraudulent enlistment, the soldier's

---

[2] This discussion is based on AR 635-200 as it was in effect on June 29, 2012, when Chen was discharged from the Army. The governing version of AR 635-200 can be found in the Certified Administrative Record on pages 390–94.

4

commander must take two steps. *See* AR 635-200 ¶ 7-17(a)(1)–(2). First, the commander must "determine if previously concealed information is, in fact, disqualifying." *Id.* ¶ 7-17(a)(1). In making this determination, "[a]ny waivable or non-waivable disqualification concealed, omitted, or misrepresented constitutes fraudulent entry." *Id.* Second, the commander must "verify the existence and true nature of the apparently disqualifying information." *Id.* ¶ 7-17(a)(2).

Soldiers who have at least six years of military service or are being recommended for a discharge under conditions other than honorable are entitled to proceedings before an administrative separation board; in all other cases, including Chen's, the solider is entitled to a notification procedure only. *Id.* ¶ 7-18(c)–(d). The notification procedure generally requires that: (1) the commander "cite specific allegations on which the proposed action is based"; (2) the soldier be advised of the potential for discharge, including the recommended discharge, and the least favorable discharge characterization the soldier could receive; and (3) the soldier be advised of the right to consult with military counsel, submit statements on his or her behalf, obtain copies of the documents in the separation packet, and to waive his or her rights in writing. *Id.* ¶ 2-2(a)–(c).

A soldier may submit materials (or "matters") on his or her own behalf, and the soldier's chain of command then forwards the administrative separation action, including the soldier's submitted matters, to the separation authority. *See id.* ¶ 2-2(c)–(d). The separation authority must "[d]etermine if the incident of fraudulent entry is substantiated" by a preponderance of the evidence and direct disposition of the case. *Id.* ¶ 7-20(b); CAR 32–34. The separation authority may issue a general-under-honorable-conditions discharge when a soldier's service is "satisfactory but not sufficiently meritorious to warrant an honorable discharge." AR 635-200 ¶ 3-7(b)(1).

In June 2012, Chen's commander directed Chen's involuntary administrative separation. (CAR 302–10.) The commander's report indicates that Chen fraudulently enlisted "by means of knowingly making false representations that he was legally in

the United States because he had a valid visa when in fact he was not lawfully in the United States because his visa was obtained by a fraudulent marriage." (CAR 303; *see also* CAR 308 ("The MAVNI program is open only to individuals who have had a valid immigration status for the previous two years prior to their enlistment. SPC Chen's immigration status was not valid.").) On June 29, 2012, Chen was discharged with a "general under honorable conditions" characterization of service. (CAR 312.)

USCIS eventually approved Chen's citizenship application, and on May 23, 2013, Chen became a U.S. citizen. (SUF 13.)

### D. Army Appeals

In 2013, Chen first applied for relief from the Army Discharge Review Board ("Review Board"), asking for two adjustments to his discharge record. (CAR 314–15.) Chen asked the Review Board to change the narrative reason for his discharge from "fraudulent entry" to "reduction in force." (*Id.*) He also requested that his discharge characterization be upgraded to "honorable," noting the two Certificates of Appreciation he received while in the Army. (*Id.*)

The Review Board reviewed Chen's application and evidence, and in March 2014, the Review Board determined that both the reason for discharge and the discharge characterization were proper. (CAR 316–25.) The Review Board found that there were "insufficient mitigating factors to merit . . . a change to the narrative reason for [Chen's] discharge" and noted that Chen "provided no independent corroborating evidence demonstrating that . . . the command's action was erroneous." (CAR 321.) Regarding the discharge characterization, the Review Board reasoned that, by procuring "his enlistment through deliberate material misrepresentation, [Chen] diminished the quality of his service below that meriting a fully honorable discharge," (*id.*), and that nothing about Chen's service was "sufficiently mitigating to warrant an upgrade to the characterization of his discharge," (CAR 322).

In 2016, Chen applied a second time for identical relief from the Review Board. (CAR 326–27.) The Review Board again reviewed Chen's application and the

1  evidence he submitted.  (CAR 327–34.)  The Review Board again denied Chen's
2  application, noting that "[t]he record confirms [Chen's] discharge was appropriate"
3  and again marking the lack of any "independent corroborating evidence demonstrating
4  that . . . the command's action was erroneous."  (CAR 330, 333.)

5        On July 7, 2019, Chen applied to the Army Board for Correction of Military
6  Records ("Correction Board"), seeking the same adjustments and additionally arguing
7  that the Army violated the Due Process Clause during the discharge process.
8  (CAR 44.)  In the brief he filed with the Correction Board, Chen wrote:

> In 2007, the Applicant married his ex-wife.  Maybe there were matchmakers, money and immigration purpose involved.  But that is immaterial.  Matchmakers promote marriages and get paid legally in China for thousands of years.  It's kind of Chinese life style. [¶] . . . The point is that when the Applicant married his ex-wife, he had the intention, among other intentions such as immigration benefits, to establish a life together with his ex-wife."

(CAR 68.)

      The Correction Board reviewed Chen's supporting documents, including sixteen exhibits Chen submitted, and set forth its factual findings.  (CAR 1–31.)  It also issued detailed responses to each of the nine arguments Chen made in support of his claims.  (CAR 31–36.)  The Correction Board found, "[b]ased on a preponderance of evidence, . . . there was no error or injustice" in the reason the Army assigned to the discharge and the "general under honorable conditions" character of service. (CAR 36.)  On October 20, 2020, the Correction Board entered its final decision denying Chen relief.  (*Id.*; SUF 17.)

### E.  District Court APA Action

      On March 23, 2022, Chen, proceeding pro se, filed a Complaint in the U.S. District Court for the Central District of California, asking the Court to review the Correction Board's decision. (Compl., ECF No. 1.)  In his Complaint, Chen sets forth six causes of action, styled as (1) discharge without basis; (2) violations of

AR 635-200—failure to verify the existence and true nature of the disqualifying information; (3) "arbitrary or capricious" action in violation of the APA; (4) "Plaintiff met the requirements for citizenship"; (5) violation of due process clause in discharge process; (6) "Plaintiff's service should be upgraded to honorable." (*Id.* ¶¶ 19–107.)

On August 8, 2022, before issuing the schedule for the case, the Court ordered the parties to provide the Court with briefing on the propriety of discovery. (Order Briefing re: Disc., ECF No. 13.) The Court noted that the default rule in APA cases is that judicial review is typically confined to the administrative record and gave Chen an opportunity to argue in favor of allowing for discovery. (*Id.*) The Court indicated that Chen's "failure to file a motion by the given deadline will be deemed as a concession that discovery is not appropriate for this case." (*Id.*) Ultimately, Chen did not file a motion as invited. Accordingly, the Court concluded that the case would proceed without discovery, and it issued a scheduling order that involved filing an administrative record and briefing the case for the Court without discovery. (Second Order re: Propriety Disc., ECF No. 17.)

On January 3, 2023, Chen moved for summary judgment, seeking judgment in his favor on all his causes of action. (MSJ; Mem. ISO MSJ, ECF No. 30.) The parties fully briefed the MSJ. (Opp'n MSJ, ECF No. 42; Reply ISO MSJ, ECF No. 44.) Rather than rule on the MSJ separate and apart from the trial itself, the Court took the MSJ as the first part of Chen's trial brief, and the Court invited the parties to file additional trial briefing under certain parameters. (Order re: Trial Briefing, ECF No. 48.) The parties filed their trial briefs in accordance with the Court's order. (Trial Br., ECF No. 51; Trial Opp'n, ECF No. 53; Trial Reply, ECF No. 54.)

### III. LEGAL STANDARD

#### A. Administrative Procedure Act

The Administrative Procedure Act permits those desiring to challenge the final decision of an administrative agency to seek review in a federal district court. 5 U.S.C. § 706. The agency's role is to resolve factual issues and arrive at a decision

supported by the administrative record, and under the APA, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "[T]he district court acts like an appellate court," *Tolowa Nation v. United States*, 380 F. Supp. 3d 959, 963 (N.D. Cal. 2019), and must "hold unlawful and set aside agency action, findings, and conclusions found to be," among others, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). The reviewing court considers the "final agency action," *Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009) (emphasis omitted), and review is confined to the administrative record, *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).

A court reviews the agency's purely legal determinations de novo. *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1144 (9th Cir. 2000). But when the agency has made factual findings, the court may review those findings only for substantial evidence; that is, the agency action is valid if a "reasonable basis exists" for the agency's factual findings. *Arrington*, 516 F.3d at 1112. An agency abuses its discretion, and its decision is therefore subject to invalidation, "if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Tongatapu Woodcraft Haw., Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984).

If the court determines that the agency action is invalid, it generally must remand to the agency for further proceedings. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

**B.    Summary Judgment**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because judicial review under the APA is confined to the administrative record, *Arrington*, 516 F.3d at 1112, in the typical case,

"the entire case is a question of law." *Tolowa Nation*, 380 F. Supp. 3d at 963 (internal quotation marks removed). Thus, courts routinely resolve APA actions by way of summary judgment. *Occidental Eng'g*, 753 F.2d at 770.

## IV. DISCUSSION

Chen's challenge under the APA comprises three components. First, Chen seeks to modify the Army's stated reason for discharging him. Second, he seeks to have his character of service upgraded from "general under honorable conditions" to "honorable." Third, he asserts due process violations based on irregularities in the discharge process. For the reasons that follow, none of these challenges has merit, and it is therefore appropriate to deny Chen's MSJ and enter judgment of dismissal with prejudice in favor of Defendant.

**A.  The Correction Board did not err in refusing to amend the reasons for Chen's discharge.**

First, Chen appeals the Correction Board's decision not to amend the stated reason for his discharge. (Compl. ¶¶ 19–67; Mem. ISO MSJ 6–19.) Importantly, Chen's appeal is not based on the contention that the evidence before the Correction Board was insufficient to support a finding that Chen had fraudulently enlisted. Nor does Chen challenge the propriety of AR 635-200 itself. (*See generally* Mem. ISO MSJ; Trial Br.) Instead, Chen's challenge to the reason for his discharge hinges entirely on a technical legal argument: that the Correction Board lacked "jurisdiction" to determine whether Chen committed the crime of marriage fraud and, accordingly, lacked jurisdiction to determine whether Chen committed fraudulent entry. (Mem. ISO MSJ 6–12.) Chen further points out that the Army never determined that it was beyond reasonable doubt that Chen committed marriage fraud, as would have been required had he been a criminal defendant. (*Id.* at 10.)

Chen's argument is unavailing. Both sides agree that neither the Review Board nor the Correction Board nor any other department of the Army ever put Chen on trial for the crime of marriage fraud. Instead, the Army's task was to determine (and the

Review Board's and Correction Board's tasks were to affirm) whether a preponderance of the evidence demonstrated that Chen had procured "an enlistment . . . through any deliberate material misrepresentation, omission, or concealment of information which, if known and considered by the Army at the time of enlistment or re-enlistment, might have resulted in rejection." AR 635-200 ¶ 7-17(a). The Army could and did make this determination without ever assuming jurisdiction over any criminal case against Chen or making any determination under the "beyond a reasonable doubt" standard of proof that applies to criminal cases.

Moreover, as the Correction Board noted, "all fraudulent entry determinations necessarily involve potentially disqualifying events that took place before an enlistment." (CAR 32.) If Chen's "jurisdiction" argument had merit, then the Army would be powerless to pursue a soldier's discharge based on fraudulent entry any time the fraud related to prior criminal activity. Both logically and as a matter of congressional intent, this cannot be the result.

That USCIS ultimately approved Chen's citizenship application does not change the result. Prior to Chen enlisting in the Army, USCIS investigated Chen for possible marriage fraud. The fact that Chen had been investigated for marriage fraud, and the details about his marriage (including the $4,000 payment to Larrimore), is information that casts significant doubt on the validity of Chen's immigration status. Therefore, the information "might have resulted in rejection" had Chen shared it with his recruiter. AR 635-200 ¶ 7-17(a). This is precisely what Chen's commander found. (CAR 303.) Chen does not argue that there was insufficient evidence in the record to allow his commander to make this finding or to allow the Review Board and the Correction Board to affirm it.

Chen also appears to argue in favor of amending the reason for his discharge on the grounds that the Army's previous stated reason for his discharge (fraudulent marriage) is not the same as the reason Defendant now offers to this Court (fraudulent entry). (Reply ISO MSJ 3–7.) This challenge of Chen's also fails because it is based

on a mischaracterization of the record. In initiating separation, Chen's commander made a written determination that a preponderance of the evidence showed that Chen fraudulently enlisted "by means of knowingly making false representations that he was legally in the United States because he had a valid visa when in fact he was not lawfully in the United States because his visa was obtained by a fraudulent marriage." (CAR 303.) The Review Board confirmed that Chen's "denial of fraudulent enlistment . . . is contradictory to the evidence contained in his official record, evidence that [was] obtained prior to and during his discharge proceedings." (CAR 322.) The Corrections Board, in turn, similarly confirmed that "there was no error or injustice in the . . . reason . . . for discharge." (CAR 36.)

Thus, on the whole, the record indicates that the Army's reason for discharging Chen was not based on the unadorned assertion that Chen had committed the crime of marriage fraud. Instead, the Army's reason for discharging Chen is the very reason Defendant now offers to this Court: that Chen failed to share with the Army information about the fraudulent nature of his marriage and USCIS's investigation— information that "might have resulted in rejection" had Chen shared it. AR 635-200 ¶ 7-17(a). This Court finds no material discrepancy between the Army's stated reasons for discharge and the reasons Defendant now offers and, accordingly, finds no error in this regard.

**B.  The Correction Board did not err in refusing to upgrade Chen's character of service to "honorable."**

Second, Chen appeals the characterization of his discharge, asking this Court to order that his discharge be upgraded from "general under honorable conditions" to "honorable." (Compl. ¶¶ 102–107; Mem. ISO MSJ 23–24.) But again, Chen's entire challenge hinges on his contention that the Army lacked jurisdiction to determine whether he had committed fraudulent marriage (and therefore fraudulent enlistment). As discussed in the previous section, the Army did not lack any such jurisdiction. Moreover, in conducting its own independent review of the record, the Court finds, for

the same reasons, that the Army's decision to discharge Chen with a "general under honorable conditions" discharge was not arbitrary or capricious under the APA.

C. **Chen fails to demonstrate any due process violations.**

Finally, Chen raises a contention that he raised first before the Correction Board: namely, that the Army violated due process in the discharge process by failing to consider certain matters Chen submitted in writing. (Compl. ¶¶ 68–101; Mem. ISO MSJ 19–23.) This contention lacks merit for two reasons.

First, it lacks merit because there is insufficient evidence before this Court to prove that the Army failed to consider Chen's written submissions. Chen argues he submitted certain rebuttal materials that never became part of the record of his separation, and accordingly, the Army must not have considered the materials—a violation of due process. Chen appears to contend that an email chain in the Administrative Record shows that the Army received rebuttal materials but did not consider them, (Mem. ISO MSJ 21), but this contention is not well taken. The email chain contains emails from agents for USCIS and the Army, sent shortly after the Army initiated separation proceedings against Chen. (CAR 762–66.) The email chain indicates that (1) Chen had the option to submit matters, and (2) one of the items Chen submitted was his EAD. But nothing in the email chain indicates or implies that the Army received rebuttal materials but did not review them.

Instead, whether the Correction Board failed to consider a particular submission is, almost axiomatically, not an issue the Court could resolve by resorting solely to the Administrative Record; after all, the Administrative Record is, at bottom, no more and no less than a compendium of what the agency in fact considered. *Herguan Univ. v. Immigr. & Customs Enf't*, 258 F. Supp. 3d 1050, 1064 (N.D. Cal. June 28, 2017) ("[T]he administrative record . . . 'consists of all documents and materials directly or indirectly considered by agency decision-makers.'" (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)). Thus, if Chen wanted to prove that the Army failed to consider a particular submission, then it was incumbent on Chen to

conduct discovery on that issue and prepare to present evidence at a trial. But Chen did not move for discovery when the Court invited him to do so, and as such, there has been no discovery in this case. (*Cf.* Mem. ISO MSJ 4 (conceding that "[j]udicial review of [Correction Board] decisions is conducted on the record of evidence before the [B]oard when it made its decision").) This case is limited to the Administrative Record, and the Administrative Record does not reveal any due process violations.

Second, and even assuming for the purpose of argument that Chen did submit some materials that the Army did not consider in discharging him, Chen nevertheless fails to prove any due process violations. Causation is an essential element of a claim for violation of due process. *See Chaudhry v. Aragón*, 68 F.4th 1161, 1169 (9th Cir. 2023). That is to say, the plaintiff must plead and prove that the due process violation is both the cause-in-fact and the proximate cause of the plaintiff's harm. *See Spencer v. Peters*, 857 F.3d 789, 800 (9th Cir. 2017).

Here, there is a lack of causation-in-fact, that is, a lack of showing that Chen's "injury would not have occurred 'but for'" the Army's conduct. *Chaudhry*, 68 F.4th at 1169 n.11 (quoting *White v. Roper*, 901 F.2d 1501, 1505–06 (9th Cir. 1990)). Chen does not describe the contents of the materials the Army allegedly did not consider, and accordingly, he fails to prove that considering the materials would have resulted in a different outcome for him. Chen simply argues that "it was more probable than not that his rebuttal materials were not reviewed by the separation authority." (Trial Reply 9.) But that is not the question; the ultimate question regarding causation is whether the separation authority would have acted differently had it considered the rebuttal materials. If it would not have acted differently, then the failure to consider the rebuttal materials was not a "but-for" cause of Chen's discharge.

Chen must demonstrate that the answer to this question is 'yes,' but he fails in this burden. In the Complaint, Chen speculates that, "[i]f the separation authority was provided a copy of [Chen]'s matters before [its] final determinations and findings, maybe the result would be different. Maybe [Chen] would not be discharged, or

maybe he would be discharged with honorable character." (Compl. ¶ 100.) Chen's trial papers echo this speculative allegation. But the allegation, even if proven, would at most show that proof of the element of causation stands in equipoise—that is, with a 50% chance that the Army would have come to the same result and a 50% chance the Army would have come to a different result. *Rose v. Sessions*, 679 F. App'x 557, 559 (9th Cir. 2017) (observing evidence sits in equipoise when "no particular . . . scenario is more likely than any other" (internal quotation marks omitted)); *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997) (noting equipoise exists "when the scales are evenly balanced"). Proof to an equipoise standard is insufficient to obtain relief; Chen must show, by a preponderance of the evidence, that the Army deprived him of his due process rights. *Simmons*, 110 F.3d at 42 ("[W]hen . . . the relevant evidence leaves a trier of fact in 'equipoise,' the party with the burden of proof loses."); *cf. Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (distinguishing between "equipoise" and "preponderance of the evidence" standards). Here, Chen fails to make that showing.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Chen's Motion for Summary Judgment, (ECF No. 29), and **AFFIRMS** the findings and determinations of the Army Board for Correction of Military Records. The Court will enter judgment.

**IT IS SO ORDERED.**

July 20, 2023

                                       **OTIS D. WRIGHT, II**
                         **UNITED STATES DISTRICT JUDGE**